UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCAL HONDA,

                    Plaintiff,

         -against-

MAURO VIEIRA, Ambassador of the Brazilian
Nation in UN,

                    Defendant.

19-CV-10661 (CM)

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

        Plaintiff, appearing *pro se*, brings this action asserting claims against the government of

Brazil for "violations against [his] fundamental civil rights (human rights)." On January 9, 2019,

Plaintiff paid the filing fee for this action.

## STANDARD OF REVIEW

        The Court has the authority to dismiss a complaint, even when the plaintiff has paid the

filing fee, if it determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants

Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (*per curiam*) (citing *Pillay v. INS*, 45 F.3d 14, 16-17

(2d Cir. 1995) (*per curiam*) (holding that Court of Appeals has inherent authority to dismiss

frivolous appeal)), or that the Court lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon

Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged, however, to construe *pro se* pleadings

liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the

"strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-

75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

        Plaintiff Marcal Honda alleges that he is a "police delegate" and has a "non-

governmental organization registered in SENAD-BRASIL." (ECF No. 2, at 2.)  According to

Plaintiff, the United States has provided financial aid to Brazil since 1999, to combat drug trafficking, money laundering, and organized crime. Plaintiff has "asked the President of the Federative Republic of Brazil [for a] rendering of accounts and investigation of possible deviations in part from $23 million provided by the US government States of America." (*Id.* at 1.) Plaintiff did not receive a response.

In his notification to the President of Brazil, Plaintiff asserts that abuses of authority and illegalities are "intended to impair the procedural instruction" of Plaintiff's cases with the "United States Department of State, . . . [the] Office of Patient Advocacy – Bellevue – HHC of New York City; and the three complaints to the IACHR of the OAS." (*Id.* at 5.)

Plaintiff contends that federal agencies in Brazil "refuse to provide information about the effective projects presented in the renewal minutes of the international agreement. Nor do they report the true application of the values provided by the USA." (*Id.*) "The office of the Minister of Justice of Brazil officially . . . denied receipt of any assistance [from] United States financial institution[s]." (*Id.*)

Plaintiff has made a request under the Freedom of Information Act (FOIA) to the United States Department of State, but "the case is still in progress." (*Id.* at 2.)

Plaintiff has made other efforts to raise the issue of Brazil's alleged misuse of funds. He "reported the violations to the UN Human Rights Council[,b]ut the Secretariat General . . . sent [him] a letter and demands that [he] exhaust all internal arrangements." (*Id.* at 3.) Plaintiff filed a complaint with the Inter-American Commission on Human Rights," but he alleges that "Brazil's government agents and agencies obstruct [his] access to documents and information." (*Id.*) Moreover, "those agents of the Government of Brazil practice retaliation in violation of [his] fundamental rights, with indirect threats and suppressions of various civil rights."

Plaintiff also "forwarded a complaint to the New York District Attorney" but received no response.

Plaintiff alleges that human rights violations have "intensified reaching [his] son, [his] brother, and close friends." (*Id.*) He seeks to "gather evidence to file a  lawsuit against the Government of Brazil, with a view to preventing them from continu[ing] with human rights violations against [him] and [his] family members and friends." (*Id.*)

## DISCUSSION

**A.  Foreign Sovereign Immunities Act**

"Actions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States," *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983). The Foreign Sovereign Immunities Act (FSIA) provides the exclusive basis for jurisdiction over foreign states in federal and state courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).

Under the FSIA, a foreign sovereign is immune from suit in federal court unless a statutory exception applies. *See* 28 U.S.C. § 1604; *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610-11 (1992) ; *Saudi Arabia v. Nelson,* 507 U.S. 349, 355 (1993) ("[A] foreign state is "presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."). [1]

---

[1] A foreign state's mission to the United Nations is properly considered to be the foreign state for purposes of the FSIA. *Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Botswana to U.N.*, No. 05-CV-2591 (HB), 2005 WL 1621342, at *3 (S.D.N.Y. July 12, 2005) ("It is well settled that a country's permanent mission to the United Nations is a foreign state for the purposes of § 1608."); *Gray v. Permanent Mission of People's Republic of Congo to U.N.*, 443 F. Supp. 816, 820 (S.D.N.Y. 1978), *aff'd*, 580 F.2d 1044 (2d Cir. 1978). "An ambassador to

3

One FSIA exception is that a foreign state shall not be immune in any case "in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2); *see also Argentine Republic*, 488 U.S. at 614-15 (issuance of bonds was non-immune commercial activity under 28 U.S.C. § 1605, regardless of purpose). FSIA also provides exceptions to the presumption of immunity for tort claims against a foreign sovereign where injury or death occurs in the United States, *Burnett v. Al Baraka Inv. and Dev. Corp.*, 292 F. Supp. 2d 9 (D.D.C. 2003), and for cases "in which rights in . . . immovable property situated in the United States are in issue," 28 U.S.C. s 1605(a)(4). *Gray v. Permanent Mission of People's Republic of Congo to United Nations*, 443 F. Supp. 816, 822 (S.D.N.Y.) (Section 1605(a)(4) seems to apply to an action for foreclosure and sale of real property in New York), *aff'd*, 580 F.2d 1044 (2d Cir. 1978).

With respect to any claim against a foreign sovereign that falls within the statutory exceptions to immunity listed in § 1605, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. This is because the FSIA incorporates state law and "was not intended to affect the substantive law determining the liability of a foreign state." *First Nat. City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 620 (1983).

In Plaintiff's complaint, he seeks an accounting of how Brazil spent money allegedly received from the United States. Plaintiff challenges, among other things, the failure "to provide information about . . . effective projects" to combat drug trafficking and money laundering, *id.* at 1, and "the immoral granting of a salary increase to Judges," *id.* at 32. He also seeks "the

---

the U.N. possesses the same privileges and immunities as a diplomatic envoy." *First Fid. Bank, N.A. v. Gov't of Antigua & Barbuda--Permanent Mission*, 877 F.2d 189, 192 (2d Cir. 1989).

payment of funds for the construction of a university hospital," *id.* at 5. Because Plaintiff is not pursuing any claim that comes within an exception to Brazil's sovereign immunity from suit under the FSIA, Defendant is immune from suit on Plaintiff's claims. [2]

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff's complaint is dismissed based on sovereign immunity.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:  February 3, 2020
        New York, New York

_____
COLLEEN McMAHON
Chief United States District Judge

---

[2] Even if Defendant were not immune, Plaintiff would lack standing to sue in order to pursue policy aims. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1555 (2016) (holding that a plaintiff "seeking relief that no more directly and tangibly benefits him than it does the public at large does not state an Article III case or controversy").